

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**JAMES EARL GIBSON,**

    Petitioner,

v.                                                                                                  Civil Action No. **3:08CV181**

**DOUGLAS M. VAUGHN,**

    Respondent.

## MEMORANDUM OPINION

James Earl Gibson, a Virginia inmate proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has moved to dismiss on the grounds that, *inter alia*, the petition is barred by the one-year statute of limitations governing federal habeas petitions. The matter is ripe for disposition.

### I. PROCEDURAL HISTORY

On January 11, 2001, the Circuit Court for the City of Norfolk ("Circuit Court") entered final judgment on Gibson's conviction for first degree murder. Gibson appealed. On May 3, 2002, the Supreme Court of Virginia refused Gibson's petition for appeal.

On July 11, 2003, Gibson filed a petition for a writ of habeas corpus with the Circuit Court. The Circuit Court dismissed the petition on April 7, 2005. Gibson appealed. On October 18, 2005, the Supreme Court of Virginia refused Gibson's petition for an appeal.

On or about November 28, 2005, Gibson filed a petition for a writ of actual innocence with the Court of Appeals of Virginia. The Court of Appeals of Virginia dismissed the petition. Gibson appealed. On November 8, 2006, the Supreme Court of Virginia dismissed

Gibson's appeal. On January 19, 2007, the Supreme Court of Virginia denied Gibson's petition for rehearing.

On April 20, 2007, Gibson filed a motion for a delayed appeal in the Supreme Court of Virginia. On May 22, 2007, the Supreme Court of Virginia denied the motion. Thereafter, on June 20, 2007, the Supreme Court of Virginia denied Gibson's motion for reconsideration.

On February 25, 2008, Gibson executed his present federal petition for a writ of habeas corpus and mailed the same to this Court. For purposes of the present motion, the federal petition will be deemed filed as of that date. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

## II. LIMITATIONS PERIOD FOR FEDERAL HABEAS RELIEF

Gibson's 28 U.S.C. § 2254 petition is subject to a one year statute of limitations. Specifically, the pertinent statute provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## III. ANALYSIS

### A. Timeliness of Gibson's Petition

Gibson's conviction became final, as that term is defined in 28 U.S.C. § 2244(d)(1)(A), on August 1, 2002, the last date to file a petition for a writ of certiorari with the Supreme Court of the United States from the decision of the Supreme Court of Virginia on his direct appeal. *See Clay v. United States*, 537 U.S. 522, 527 (2003). Hence, Gibson had one year from that date to file this federal petition for a writ of habeas corpus.

The limitation period ran for 345 days until it was tolled by Gibson's filing a petition for a writ of habeas corpus with the Circuit Court on July 11, 2003. *See* 28 U.S.C. § 2244(d)(2). The limitation period recommenced on October 18, 2005, when the Supreme Court of Virginia refused Gibson's collateral appeal. *See id.* Gibson had 20 days from that date, or until November 7, 2005, to file his federal petition for a writ of habeas corpus. Gibson did not file any state or federal petition for collateral relief by that date. Thus, the current petition for a writ of habeas corpus is barred by the statute of limitations.

### B. Gibson's assertion of actual innocence

Gibson contends that he is entitled to equitable tolling of the limitations period because he is actual innocent. Neither the Supreme Court nor the United States Court of Appeals for the Fourth Circuit has decided whether a claim of actual innocence would warrant tolling of the statute of limitations. Nevertheless, before addressing this difficult question, the Court should first consider whether Gibson has made a sufficient showing of actual innocence. *Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1333 (11th Cir. 2008). "Claims of actual innocence, whether presented as freestanding ones, *see Herrera v. Collins*, 506 U.S. 390, 417 (1993), or merely as

gateways to excuse a procedural default, see *Schlup v. Delo*, 513 U.S. 298, 317 (1995), should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (additional parallel citations omitted.) Here, the Court reviews Gibson's claim under the more lenient standard for gateway claims set forth in *Schlup*. "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (*quoting Schulp*, 513 U.S. at 327). "[A] gateway claim requires 'new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial.'" *Id.* at 537 (*quoting Schulp*, 513 U.S. at 324). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324. The Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House*, 547 U.S. at 538 (*quoting Schlup*, 513 U.S. at 327-28).

Here's Gibson's claim of actual innocence is largely founded on the affidavit of Tony Long, a co-defendant in the murder of Eddie Van Patten, who has now recanted his trial testimony.[1] The Court notes that "when considering an actual-innocence claim . . . the District Court . . . may 'consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.'" *Id.* at 537 (*quoting Schlup*, 513 U.S. at 331-32). In this regard, recantation testimony, particularly by a codefendant who now has

---

[1] Gibson also has submitted some other material, including some letters purportedly from Long. Such material is of negligible value in evaluating Gibson's assertion of innocence.

4

nothing to lose by recanting, is not reliable evidence of innocence. *See United States v. Hackley,* 164 F. App'x 301, 305 (4th Cir. 2006) (No. 04-6025) (*citing United States v. Johnson,* 487 F.2d 1278, 1279 (4th Cir. 1973)).

The Court of Appeals of Virginia aptly summarized the evidence at trial as follows:

<u>Facts Adduced At Trial</u>
Gibson, Tony Long, Eddie Van Patten and Clinton Sutton were involved in a malicious wounding and botched robbery. Afterwards, the men made a pact not to talk about the crimes with anyone. Gibson and Long heard rumors about the crimes in the community, and they suspected that Van Patten had broken their pact. Long wanted to question Van Patten about the rumors, and Gibson, Long, and Van Patten met at Gibson's house on March 15, 2000. Gibson and Long told Van Patten they wanted to rob a Mr. Johnson and they went to the garage to act out the planned robbery. Long, a Commonwealth's witness at Gibson's trial, testified he and Gibson convinced Van Patten to put a rope around his neck and he ordered Van Patten to the floor. Long testified that he kicked and punched Van Patten while Gibson pulled tight the rope and strangled Van Patten from behind. Long and Gibson disposed of Van Patten's body in a wooded area.
    The investigating detectives questioned Long, and he denied any knowledge of Van Patten's disappearance. The detectives questioned Gibson, and he admitted he was present at the time of Gibson's death, although he denied direct involvement. According to Gibson's confession, he left the garage to smoke a cigarette and heard Long and Van Patten arguing about the botched robbery. Gibson stated he looked inside the garage and saw the men fighting, but turned away and continued to smoke his cigarette. Gibson stated he heard Van Patten yell, returned to the garage, and saw Long on top of Van Patten pulling a rope around Van Patten's neck. Gibson stated Van Patten was still gasping for air when he helped Long place Van Patten's body in a truck. After Gibson's confession, the detectives questioned Long, and at that time Long knew Gibson had made a statement to the police. Long then made a statement to the detectives that was consistent with his trial testimony. The medical examiner determined Van Patten died from ligature strangulation. The medical examiner testified that Van Patten sustained bruising and abrasions around his head and had been strangled from behind. The medical examiner testified that consistent pressure for several minutes was required for strangulation to result in death.[2]

---

[2] Gibson told a fellow inmate, Larry Roach, that he was incarcerated because he and a friend beat and strangled another individual.

5

The Court of Appeals of Virginia summarized Gibson's evidence of innocence as follows:

### Long's Affidavit Recanting His Trial Testimony

In support of his petition for a writ of actual innocence, Gibson contends that Long contacted Mr. Wiggins, Gibson's *habeas counsel*, seeking to recant his trial testimony. On August 27, 2002, Long signed an affidavit in which he admitted he strangled Van Patten while Gibson was outside the garage and that Van Patten was dead when Gibson returned to the garage. Long stated the detectives showed him Gibson's statement, and after seeing Gibson's statement, he lied to the detectives and said Gibson strangled Van Patten. Long's affidavit provide that Gibson "took no part" in the murder and did not "know [Van Patten] was going to die that day." Long reaffirmed his recantation of his testimony in a July 2, 2005 affidavit.

*Id.* at 2-3.

This Court agrees with the Virginia Court of Appeals observations regarding the shortcomings of Gibson's evidence of his innocence:

Long's recantation is inconsistent with Gibson's statement to the police soon after the murder. In his statement, Gibson stated Van Patten was gasping for air when he entered the garage, whereas Long's recantation provided that Van Patten was dead when Gibson entered the garage. In his statement, Gibson stated Long put Van Patten's body in the truck, whereas Long's recantation provided Gibson helped place Van Patten's body in the truck. In his statement, Gibson stated he drove the truck to Long's home and left, whereas Long's recantation provided Gibson helped dispose of the body.[3] In Long's confession soon after the murder, he stated he had a conversation with Gibson on how to kill Van Patten, whereas in his recantation, Long stated Gibson "took no part" in the murder and did not "know [Van Patten] was going to die that day."[4] Long's recantation is also inconsistent with his statement to Strebe immediately after the murder.

---

[3] Brian Strebe, a friend of Gibson and Long, gave a statement to the authorities shortly after Van Patten's murder. Strebe was at Gibson's house and stated that Gibson and Long told him they believed Van Patten had "snitched" on them, and Van Patten "was going to get his." Stebe left Gibson's house but Long later called Strebe asking for help in disposing a body. Strebe went to Long's house, and Strebe helped Gibson and Long dispose of Van Patten's body. Strebe stated Long admitted he strangled Van Patten as Gibson kicked Van Patten.

[4] Long's recantation is also inconsistent with the evidence that Van Patten broke the "pact" not to discuss the botched robbery and malicious wounding.

6

Long's trial testimony was consistent with the medical examiner's findings of bruising of Van Patten's head and the manner of his death.

*Id.* at 4-5. The totality of the evidence overwhelmingly indicates that Gibson acted in concert with Long in the murder of Van Patten. The record reflects that it was a joint enterprise by Long and Gibson to lure Van Patten to Gibson's home. Furthermore, the fact that Van Patten was strangled with a noose in Gibson's garage belies Gibson's story that he and Long had not planned to execute Van Patten. It is difficult to conceive how Long could have fashioned the noose in the midst of fight with Van Patten and singlehandedly managed to slip it over Van Patten's neck. Gibson version of events is made even more implausible by the fact that Van Patten was very strong and much taller than Long. Gibson fails to demonstrate in light of his new evidence, "'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (*quoting Schulp*, 513 U.S. at 327). Gibson's assertion of actual innocence is rejected

## IV. CONCLUSION

Gibson's federal habeas corpus petition is time-barred. Respondent's motion to dismiss (Docket No. 5) will be GRANTED. The petition will be DENIED and the action will be DISMISSED.

An appropriate Order shall issue.

Date: MAR - 5 2009
Richmond, Virginia

/s/
Richard L. Williams
United States District Judge